UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNA M. LONG,

   Plaintiff,

vs.        CIVIL NO.:  05-CV-40206-DT

COMMISSIONER OF    HON. PAUL V. GADOLA
SOCIAL SECURITY,    MAG. JUDGE WALLACE CAPEL, JR.

   Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.**  **RECOMMENDATION**

  It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part, deny Defendant's Motion for Summary Judgment, and remand this case for proceedings consistent with this Report.

**II.** **REPORT**

  This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits.  Plaintiff filed for benefits on October 1, 2002, alleging that she has been disabled and unable to work since November 30, 2000,[1] due to back and right knee problems, bronchitis, an enlarged heart, carpal tunnel syndrome in her right and left wrists, "bone spurs [right]," rotator cuff problems, migraines, respiratory problems relating to chronic obstructive pulmonary disease, muscle pain and cramping.  (TR 27, 53-55, 65).  The SSA

_____

[1]Plaintiff's lead was established by the Social Security Administration [SSA] on September 23, 2002, and that leads/protective filing worksheet form states her onset date as November 1, 2000. (TR 56).

1

denied benefits initially on March 14, 2003.  (TR 28-32).  A de novo hearing was held on December 21, 2004, before Administrative Law Judge [ALJ] Hartman.  (TR 235-66).  In a decision dated March 23, 2005, the ALJ found that Plaintiff could perform some sedentary work.  (TR 15-22).  Accordingly, Plaintiff was found not disabled.  (TR 22).  Plaintiff then made this appeal to district court.

### A.    PLAINTIFF'S TESTIMONY

Plaintiff was born on January 7, 1957, and was 47 at the time of the hearing.  (TR 239).  She testified that she is five foot, one and three-quarter inches tall.  Id.  She stated that she is two hundred and three pounds, and that this is her normal weight.  Id.  She stated that she is married and her spouse is self-employed, which is their only source of income.  (TR 239-40).  She stated that she has children, but that they do not live at home with her.  (TR 251).

She testified that she owns a car and drives.  (TR 240).  She reported that she completed the tenth grade and has no other vocational training.  Id.  She stated that she was last employed with the Die-Cast Corporation.  Id.  She stated that she "ran a die-cast machine and inspection" from 1994 to 1996, while working full-time with forty-hours plus.  Id.  She stated that she lifted up to fifty-five pounds maximum and was on her feet eight hours a day.  (TR 240-41).  She explained that she left her job when she was injured.  (TR 241).

Plaintiff testified that she was a housekeeper in a hospital from September 1999 until August 2000.  (TR 259).  She stated that she lifted ladders and cleaning equipment up to twenty-five pounds.  Id.  She stated that she also worked as a cook part-time prepping food, cooking and doing the dishes.  (TR 259-60).  She stated that it was a four-hour-a-day job and she lifted up to twenty to thirty pounds.  (TR 260).

2

Prior to Die-Cast and the hospital, she was employed as a clerk at Craig's Party Store from 1996-1999. (TR 241). She stated that she also ran the deli. Id. She stated that she worked full-time and only stopped when the business was sold. Id. She reported lifting up to twenty-five pounds and standing seven hours during her shift at the party store. Id.

She stated that prior to working at the party store, she was employed at Winsler's Dry Cleaners from 1988 to 1990 and again around 1993 for about six months. (TR 241-42, 243). She stated that she pressed and laundered shirts. (TR 241). She stated that it was a part-time job and she worked between twenty-eight and thirty hours. (TR 242). She stated that she lifted up to thirty pounds and the time she spent on her feet varied day-to-day. Id. She left that job for better pay at Die-Cast. Id.

Prior to the part-time employment, Plaintiff testified that she worked as a station attendant for Clark's Station, pumping gas, and operating the cash register for two years. (TR 242-43). She stated that she worked full-time and the maximum she lifted was thirty-five pounds. (TR 243). She reported being on her feet seven to eight hours a day. Id. She stated that she does not remember why she left that job. Id.

Plaintiff stated that she had knee surgery in April 2000 and then therapy, but she could not stand or do her job any longer; thus, she reported November 30, 2000, as the day her disability began. Id. She stated that she has not worked for pay or volunteered since that date. (TR 244). She explained that she can no longer work due to "[s]hortness of breath, migraine headaches, fatigue, pain, muscle pain, and [she] need[s] . . . to lift [her] feet and recline back." Id.

She stated that her physical problems began in 1996 and she treats with Dr. Rose Johnson. Id. She stated that she last saw her on November 2, 2004, approximately seven weeks prior to the hearing. Id. She stated that her next appointment was scheduled for January 13, 2005. Id. She

reported that her doctor checks her muscle pain, gives her pain medication, and checks her breathing.  Id.

She stated that her pain varies and is not everywhere, everyday, but her muscle pain occurs in her legs, back, shoulders, and neck.  (TR 245).  She described the pain:

> It's a burning pain in my muscles.  It - - my muscles cramp.  It hurts to touch sometimes just to touch me.  I get migraines to where I have to sometimes go and lay down in a dark room, cover my head.  It hurts to walk.  Hurts to sit for long periods of time or to stand.

Id.  She stated that she can stand for five to ten minutes at a time and her ability to sit varies.  Id. She explained that it depends on whether she sits in a hard or soft chair, but regardless, she reported that she cannot sit for a half hour without burning lower back pain.  Id.  She stated that she can walk maybe twenty-five feet to the length of one block.  Id.

She reported that her pain is getting worse.  Id.  She stated that when the pain first began it was a ten on a scale of one to ten with ten being the worst pain.  (TR 246).  She stated that her pain was at an eight during the hearing.  Id.  She stated that laying down on her side with her arms and legs propped up on pillows, with a pillow between her legs helps the pain.  (TR 246, 253).  She stated that she has to use four pillows on her back.  (TR 253).  She stated that if she lays flat, she aches.  Id.  She stated her breathing is also more labored if she lays flat.  (TR 253-54).

She stated that standing, walking, or setting in a hard chair makes her pain worse.  (TR 246). She reported that the pain is constant.  Id.  She stated that her medications help at times, and other times they provide no relief.  (TR 247).  She stated that if she takes two pills at the same time at night, she gets drowsy.  Id.  She reported that "rubbing" the pain also helps.  Id.

Plaintiff testified that the maximum weight she could carry would be five pounds.  Id.  She stated that she cannot bend over at all, sit, squat, or climb stairs.  Id.  She stated that she does not

4

have stairs in her home.  Id.  She stated that her fingers and hands go numb and tingle.  Id.  She reported she can pick up small objects, but not very well.  Id.

Plaintiff reported that her physical problems also cause her mental difficulties and there are days that she does not "want to be here."  (TR 248).  She stated that she takes Desyrel, but does not receive any other type of therapy.  Id.

She stated that she reads only "[v]ery little" because she suffers from headaches.  Id.  She stated that she reads for about half an hour throughout the day, such things as newspaper articles and her mail.  Id.  She testified that her headaches occur two to three times weekly, but there have been times when she has gone one or two weeks without a headache, albeit infrequently.  (TR 257).  About once a week, she stated that she has to lie down in the dark for two to three hours.  (TR 257-58).  Plaintiff stated that she has good and bad days, but only two in a seven day period would be classified as "good."  (TR 258).  On good days she stated that she has pain in her arms or legs; or she might not have a stiff neck or shoulders.  Id.  Further, she stated that a good day might be a day that she does not have a headache.  Id.

She stated that she watches about two or three hours of television a day.  (TR 248).  She stated that she watches ER and NYPD Blue.  Id.  She stated that she does have some trouble following the story line on certain shows and also has problems with memory.  Id.  She stated that she is forgetting a lot and cannot remember where she puts things.  (TR 249).  Plaintiff also testified that she has vision problems.  (TR 250).  She reported that she wears bifocals.  Id.  She stated that she does not have any hearing difficulties.  Id.

Plaintiff testified that she has friends, which she visits two to three times each week for thirty to forty-five minutes at a time.  (TR 249).  She stated that she also visits family once a week.  Id.  She

stated that she does not "like to be around a lot of people," which she stated would be ten or fifteen people. Id.

She described her breathing problems. (TR 249-50). She explained that she gets short of breath just walking down her driveway and when she vacuums. (TR 249). She stated that she has to sit down after doing same and if she does anything that leads to heavy breathing, it requires her to stop for a while and go back to whatever she is doing later. (TR 249-50). She stated that she has not had any recent asthma attacks. (TR 250). She stated that her last attack was in June or July. Id. She stated that she smokes a half to a whole pack of cigarettes a day, but is trying to quit. Id.

Plaintiff testified that she uses inhalers, Advair and Albuterol, everyday. (TR 254). She stated that the Advair is timed and the Albuterol is as needed. Id. She stated that she uses the Albuterol two or three times a day when she has "[r]eal shortness of breath, and [is] gasping for [] air." Id. She stated that the gasping for air occurs more when she is active than not. Id. She stated that after using the inhalers, it takes a little while for relief, so she just sits and waits. (TR 254-55).

Plaintiff testified that she goes to bed at about eleven or twelve at night. (TR 250, 255). She reported that she does not sleep through the night because her feet and lower legs cramp. (TR 255). She stated that she gets up and walks around, then lays back down. Id. She described a typical day:

> I get up. I drink a cup of coffee. I sit at my table, and then I start just everyday routine. And then I lay down around 8:30, quarter to 9:00. Then I'm back up around 11:00. I do a little bit of the housework. Then by, I don't know, you know, mid-afternoon or whatever, I try to take a nap. Then I sit. I lay, prop my legs up. Basically that's my days [sic].

(TR 251). She stated that her feet and ankles swell; thus, she elevates them three to four times a week. (TR 256-57). However, she stated that the swelling is not an every day occurrence. (TR 257). She stated when they swell she feels tingling and a burning sensation. Id.

Plaintiff reported that she enjoys gardening in the spring and summer, but stated that she only goes out ten or fifteen minutes once a week. (TR 251). She also stated that she has live frogs and "there's not too much to do with them. You just set and watch them." Id. She testified that she had other hobbies, namely crocheting, but she had to give it up due to her pain and the required finger work. (TR 251-52). She stated that the last time she crocheted was "[p]robably three years ago." (TR 252). Plaintiff stated that she has problems grooming herself. Id. She stated that she cannot brush her hair and her husband has to help her dry off because she cannot bring her arms back or bend over. Id. She stated that she cannot prepare meals and her husband does it. Id. She stated that she does laundry, but not dishes because she has a dishwasher. Id. She stated that her daughter comes over and helps her with chores, and will take over vacuuming if Plaintiff is having trouble with it. (TR 255-56). She reported that she cannot vacuum an entire room and has to stop vacuuming after three to five minutes. (TR 256). She stated that she does not do yard work (other than her minimal gardening) or shopping for food. (TR 253). She stated that she does not eat out, go to the movies, or go to church. Id.

### B.   MEDICAL EVIDENCE

Examination of the parties' cross-motions for summary judgment reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[2]

### C.   VOCATIONAL EXPERT'S TESTIMONY

Sharon Princer, a vocational expert [VE], testified at the hearing. (TR 258-65). The VE classified Plaintiff's past relevant work as follows: dry cleaner, unskilled and medium; service

---

[2]See Subpart E, infra, at 10.

station cashier, unskilled and light to medium; factory worker, unskilled and medium to heavy; party store cashier, unskilled and light to barely medium; housekeeper, unskilled and light to barely medium; and part-time cook, semiskilled and medium.  (TR 260-61).

The ALJ asked the VE whether a hypothetical person would be capable of any of Plaintiff's past relevant work. (TR 261).  The VE stated that such a person would be capable of the shirt presser position, as Plaintiff testified she performed same, clerk at the service station, clerk at the party store, and the housekeeping position.  Id.

The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work experience "whose ability to do fine fingering is reduced and needs to elevate her feet probably say once a shift.  Should not be exposed to any environmental fumes such as odors, dust, or ventilation and needs simple, unskilled work." (TR 261-62).  The VE testified that under these limitations, with feet elevated during a break, the following unskilled light jobs existed in the region:  security guard, 2,400 positions; and clerk, 16,140, reduce to 8,000 for fine finger, and further reduced to 4,200 positions as light.  (TR 262).

The ALJ then gave the VE a second hypothetical assuming the "hypothetical person [was] further limited to sedentary work requiring a sit/stand option but keeping all of the other restrictions."  (TR 263).  The VE testified that the following jobs existed:  clerk, reduced range 4,500 positions; and security guard, reduced range of 2,200 positions.  Id.

Further, assuming that all Plaintiff's testimony was fully credible, such a person would not be able to perform any competitive employment.  Id.  The VE explained that all employment would be precluded due to her testimony regarding constant pain, the need to recline and elevate her legs three to four times a day, lying down and propping up her legs, drowsiness from medication, hands

numbness, memory problems, shortness of breath, inhaler use and the related need to sit and wait, and her severe migraines necessitating the need to lay down.  (TR 263-64).

The VE testified that her responses were consistent with the Dictionary of Occupational Titles, "[w]ith the exception of sit/stand which [was] based on professional experience."  (TR 264).  Further, the VE testified that she used the following sources:  "U.S. Publishing, Occupational Outlook Handbook, labor figures in the state of Michigan, and professional experience."  Id.

Plaintiff's counsel questioned the VE.  (TR 264-65).  He asked whether steam was included in fumes in the first hypothetical.  (TR 264).  The VE explained that the dishwasher position would include exposure to steam, but not "fumes like working [] in a garage."  Id.  Further, the VE stated that exposure to fumes was the reason that the housekeeper position was not listed.  (TR 265).

Upon further questioning by counsel, the VE testified that there could be writing involved in the clerk and receptionist positions and explained that any percentage of writing would depend on the job.  Id.  The VE explained that the mail clerk position would not require "much writing at all."  Id.  Further, the receptionist, information clerk position was reduced to accommodate the note taking aspect of the position.  Id.  The VE testified that an educated guess of the percentage of the workday that a general office clerk would require writing would be twenty-five percent.  Id.

### D.    ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that Plaintiff suffered from "asthma, low back/knee pain, and chronic obstructive pulmonary disease (COPD),  impairments that are 'severe' within the meaning of the Regulations," but that she does not have an impairment or combination of impairments set forth in Appendix 1, Subpart P, Regulations No. 4.  (TR 17, 21).  She also found that Plaintiff suffered from non-severe impairments of depression and fibromyalgia.  (TR 17).  The ALJ found Plaintiff's testimony not to be

9

credible.  (TR 19, 21).  She determined that Plaintiff had the residual functional capacity to perform

a significant number of sedentary positions.  Id.  Thus, the ALJ concluded that Plaintiff is not eligible

for disability.  (TR 22).

### E.     ANALYSIS

Plaintiff advances one main claim in her Motion for Summary Judgment.  Plaintiff's Motion

argues that the ALJ's decision is not supported by substantial record evidence because the ALJ erred

in assessing her credibility.[3]  In response, Defendant's Motion for Summary Judgment contends that

these aspects of the ALJ's decision are supported by substantial evidence.[4]  The matter is now ready

for decision.

### 1.     Standard of Review

This Court's review of the ALJ's conclusions is limited.  The findings of the ALJ regarding

Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as

a whole.  42 U.S.C. § 405(g) (1997).  Substantial evidence means such evidence as a reasonable mind

might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971).

It is more than a scintilla of evidence, but less than a preponderance of evidence.  Brainard v. Sec'y

of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).  This standard presupposes that there

is a "zone of choice" within which the ALJ may make a decision without being reversed.  Felisky v.

---

[3]Plaintiff's Motion for Summary Judgment and Brief filed October 4, 2005 (hereinafter "Plaintiff's Brief"), at pages 9-15.  Plaintiff also asserts that the ALJ erred in finding her capable of sedentary work, but fails to develop the argument further, other than to recite medical evidence. Plaintiff's Brief at page 3.  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to....put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).

[4]Defendant's Motion for Summary Judgment and Brief filed December 15, 2005 (hereinafter "Defendant's Brief"), at pages 6-9.

Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Applying these standards, I will analyze each of Plaintiff's claims.

### a.     Credibility

Plaintiff alleges that the ALJ improperly assessed her credibility.[5] In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so then, 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. McCoy on Behalf of McCoy v. Chater, 81 F.3d 44, 47 (6th Cir. 1995) (quoting Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 117 (6th Cir.1994) (citing Jones v. Sec'y of Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir.1991) and (quoting Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 853 (6th Cir.1986)).

In order to determine disability based on subjective complaints, we look to 20 CFR § 404.1529(c)(3) and the following factors:

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or

---

[5]Plaintiff's Brief at pages 9-15.

other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

As Social Security Ruling (SSR) 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See also, Murray v. Comm'r of Soc. Sec., 2004 WL 1765530, *4 (E.D. Mich., Aug. 3, 2004) (slip copy).

The ALJ specifically discussed Plaintiff's credibility. (TR 19). She stated that

[t]he medical evidence of record does not suggest that the claimant has a disabling condition. She was not hospitalized subsequent to her alleged onset date, nor did she receive regular care from a physician. The claimant informed Dr. Sachdev that she had not worked in two years because of the progression of her shortness of breath and that she could not walk "even a block" without becoming short of breath. However, she stated in her Pain/Daily Activities Form that she was able to do laundry, vacuum, dust, cook, mop, and wash dishes with assistance from her daughter or husband. Dr. Sachdev noted that even though the claimant reported that she needed frequent breathing treatments, she had not required hospitalization nor had she been placed on prednisone. The claimant has been advised repeatedly that she needs to quit smoking. A nicotine cessation program was even recommended by Dr. Sachdev, but she has not quit and has stated that she is not ready to do so. She testified that she continued to smoke and that she smoked one-half to one pack of cigarettes daily. She further testified that her asthma was under good control and that she had not had an attack in five to six weeks. While the claimant alleges an onset date of November 30, 2000, the medical evidence record is practically devoid of any relevant documentation prior to June, 2001; the next relevant documentation is dated December 21, 2001. The evidence is insufficient to find the claimant disabled. The undersigned finds that the claimant's allegations of pain are not consistent with the medications prescribed and the documentation contained in the medical evidence record. Furthermore, the undersigned finds that the claimant's allegations of inability to work are only partially credible in light of the record as a whole which indicates that she can perform activities consistent with work functions that fall within sedentary work.

Id. The regulations clearly state that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability

12

to work solely because the available objective medical evidence does not substantiate your statements." 20 CFR § 404.1529(c)(2).

Further, although an ALJ is not required to discuss each and every piece of evidence, he or she "may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale for his decision." Young v. Comm'r of Soc. Sec., 351 F.Supp.2d 644, 649 (E.D.Mich. 2004).[6] This is precisely what the ALJ did here. The sole factor of the seven the ALJ relied on under 20 CFR § 404.1529(c)(3), was her daily activities.[7] However, as Plaintiff points out,[8] the ALJ failed to note that her activity log states that she only does household chores ten to fifteen minutes at a time. (TR 91). Further, she wrote on the form that she "can't seem to complete the job in full so [her] daughter does most of it for [her], once or twice a week, and husband helps with the rest throughout the week." Id.

In addition, although the ALJ is not necessarily required to detail each and every factor under 20 CFR § 404.1529(c)(3), she neglected to discuss the credibility of Plaintiff's alleged need to lay

---

[6]The undersigned recognizes "district judges in this circuit must not treat decisions by other district judges, in this and a fortiori in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies. Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits." TMF Tool Co., Inc. v. Muller, 913 F.2d 1185, 1191 (7th Cir. 1990) (quoting Colby v. J.C. Penney Co., Inc., 811 F.2d 1119, 1124 (7th Cir.1987) (emphasis in original)). See also Liebisch v. Sec'y of Health and Human Servs., 21 F.3d 428, 1994 WL 108957, *2 (6th Cir. 1994) ("District Court opinions have persuasive value only and are not binding as a matter of law.") (unpublished disposition; Table).

[7]Defendant argues that the ALJ considered other factors, including medical opinion evidence, Plaintiff's treatment, her medications, and her activities. Defendant's Brief at page 7. Defendant does not cite to the record for support. The undersigned suggests that if the ALJ did discuss those other factors, she did not do so within her discussion as it relates to credibility specifically. Further, in its brief, Defendant states, "Plaintiff's activities were one of several factors the ALJ was required to consider in assessing her credibility and her functional capacity. Defendant's Brief at page 8. However, Defendant again fails to cite to the record and instead cites the relevant regulation.

[8]Plaintiff's Brief at page 11.

13

down and elevate her feet during the day.  Such allegations are specifically outlined under 20 CFR § 404.1529(c)(3), which states that an ALJ should look at "measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20 minutes every hour, or sleeping on a board)."  This factor is especially important here, where as Plaintiff notes,[9] the VE testified that such a limitation, among other factors, would preclude all employment.  (TR 263).

In addition, other daily activities went entirely without discussion by the ALJ in terms of credibility.  (TR 91-92).  The ALJ neglected to mention that she denies shopping or the difficulties with dressing, taking a bath, or doing her hair.  Id.  Of somewhat less importance, the ALJ neglected to discuss Plaintiff's side-effects from certain medications.[10]

The undersigned recognizes that normally, the "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference" and should not be disturbed.  Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citation omitted).  However, in the present case, the ALJ failed to make a credibility assessment consistent with 20 CFR § 404.1529(c)(3).

## 2.    Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff.  It is firmly established that under § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted).  More specifically, "[a] judicial award of benefits is proper only

---

[9]Plaintiff's Brief at pages 13-14.

[10]Plaintiff testified that she suffers from drowsiness when she takes certain medications together at night.  (TR 247).  She also stated that her medications cause upset stomach and vomiting. (TR 89).

14

where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

Here, the ALJ's adverse decision was deprived of substantial evidentiary support because the ALJ did not properly assess credibility pursuant to 20 CFR § 404.1529(c)(3). The credibility determination may also have an effect on the hypothetical challenges posed by Plaintiff.[11] Thus, because there are factual issues that need to be resolved, further proceedings are necessary. Therefore, a remand for an award of benefits at this time would be premature and inappropriate.

## III.   CONCLUSION

For the reasons stated, I respectfully recommend that the court **GRANT** Plaintiff's Motion for Summary Judgment **IN PART**, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case to the Defendant Commissioner for further proceedings consistent with this Report.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

---

[11]The undersigned notes that an ALJ is not bound by responses to a hypothetical that assumes limitations found to be not credible. Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 247 (6th Cir. 1987). However, the ALJ's credibility itself is flawed for the aforementioned reasons set forth in this report.

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.


s/Wallace Capel, Jr.
**WALLACE CAPEL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**Dated:**   June 20, 2006

16

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: James A. Brunson, and Kenneth F. Laritz,

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s):  the Social Security Administration.

s/James P. Peltier
United States District Court
Flint, Michigan 48502
810-341-7850
E-mail:       pete_peltier@mied.uscourts.gov

17